## VALENTINE v. MUIR.

(Supreme Court, Special Term, New York County. March 17, 1910.)

1. PARTNERSHIP (§ 53*)—EXISTENCE—EVIDENCE—ACCOUNTING.

In a suit for partnership accounting, evidence *held* to sustain a finding that a partnership existed between complainant and defendant, involving shares in profits and losses, and that complainant was entitled to an accounting.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 76; Dec. Dig. § 53.*]

2. PARTNERSHIP (§ 325*)—ACCOUNTING—RECEIVERS.

Where, in a suit for an accounting of a partnership engaged in the brokerage business, the appointment of a receiver will destroy the use by defendant of his Stock Exchange seat, he may be permitted to give bond in lieu of a receiver.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 767; Dec. Dig. § 325.*]

Suit by Ludlow W. Valentine against John Muir for an alleged partnership accounting. Decree for complainant.

See, also, 132 App. Div. 930, 117 N. Y. Supp. 1149.

Maloney & Harding, for plaintiff.

Wilbur L. Ball, for defendant.

DAYTON, J. The proofs show that on March 20, 1899, John Muir, William A. Powell, and Ludlow W. Valentine formed a copartnership under a written agreement with a capital of $85,000, of which Mr. Valentine contributed $40,000, Mr. Muir his Stock Exchange seat at $35,000 and $5,000 cash, and Mr. Powell $5,000 cash. After paying 5 per cent. interest on Mr. Valentine's capital, the profits and losses were fixed as follows: Mr. Muir, 52½ per cent., Mr. Valentine, 30 per cent., and Mr. Powell, 17½ per cent. In August, 1899, Mr. George A. Muir, with $5,000 capital, became a member of the firm, with the following share in the profits and losses: Mr. Muir, 47¼ per cent.; Mr. Valentine, 27 per cent.; Mr. Powell, 15¾ per cent.; and Mr. George A. Muir, 10 per cent. Subsequently Mr. Powell withdrew, and without any further written agreement the firm continued with Mr. Muir, Mr. Valentine, and Mr. George A. Muir, the share of profits and losses being in varying proportions—Mr. Muir claiming 60 per cent. for himself, 22½ per cent. for George A. Muir, and 17½ per cent. for Mr. Valentine; Mr. Valentine claiming 27 per cent. for himself and 18 per cent. for George A. Muir. It would seem that between 1901 and February, 1904, Mr. Valentine received 17½ per cent. and Mr. George A. Muir, received 22½ per cent. of the profits. Mr. George A. Muir is the son and Mr. Valentine the son-in-law of John Muir.

The defendant claims that, unknown to him, his son George, by speculations, exhausted the capital of the firm, which was consequently, about February 15, 1904, in writing, dissolved. In this situation Mr. John Muir and Mr. Valentine continued the business by announcement as partners. Mr. Valentine so appeared and acted that, so far as con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cerned the public, he was indisputably liable for any and all obligations of the firm of John Muir & Co. This situation continued until the fall of 1908, when plaintiff demanded an accounting, which being refused, he brought this action for such accounting and a receiver. Defendant admits a naked or "nominal" partnership, but says it was formed in the emergency stated, with the distinct understanding that Mr. Valentine should bear none of the expenses and should share none of the proceeds, except such "floor brokerage" as he (Valentine) might earn on the Cotton Exchange. Mr. Valentine maintains that the firm was so continued under an agreement that neither partner should withdraw profits, but allow them to accumulate; Mr. Valentine to draw said Cotton Exchange "floor brokerage" and Mr. Muir the Stock Exchange "floor brokerage," and the share of the net profits to be Mr. Muir 55 per cent., Mr. Valentine 27 per cent., the remaining 18 per cent. not being disposed of unless proportionately merged into the other shares.

The proofs show that considerable business on the cotton, coffee, grain, and stock markets was done by the firm between 1904 and 1908. Mr. Valentine testified that he had implicit confidence in his father-in-law, and did not investigate the books nor make any demand for an accounting until 1908, although he filled orders on the Cotton Exchange, attended at the office, signed leases, and countersigned checks and loan agreements. The question is whether this conceded partnership was "nominal" only, or actually inter sese. Considerable testimony has been taken and is conflicting on the main point. In reaching a conclusion circumstances and probabilities must be considered. I am not convinced that Mr. Valentine knew of or assented to the somewhat screened and disreputable speculations of George A. Muir. Nor am I satisfied with the explanation sought to be given as to charging capital account in February, 1904, with $42,000 loss on 25,000 bags of coffee. Mr. Valentine entered the firm quite a young man, with little or no business experience. When he and John Muir talked over the catastrophe of Mr. George A. Muir's speculations in 1904, Mr. Valentine had his seat in the Cotton Exchange, so that there was no advantage to him in remaining with John Muir and assuming all the liabilities of a partnership towards third parties and creditors (including Mrs. John Muir for $38,000), unless upon a basis which had a possible regaining of his capital stated to have been lost; and therefore the suggestion that profits be allowed to accumulate was reasonable, not only on the part of Mr. Valentine, but also of Mr. Muir. It was best for both that they remain together, and the result to "John Muir & Co." in all branches of its business has proved the wisdom of their decision. That Mr. Valentine did not insist upon an examination of the books, nor in other ways assert his rights as an actual partner, for so long a period, is not to my mind an effective argument. If George A. Muir betrayed his father's confidence, surely it cannot be said that Mr. Valentine suffered in Mr. Muir's esteem, for to the rest of the world he continued him as his partner up to a period in 1908, when John Muir & Co. had largely recovered from the disasters alleged to have been caused by George A. Muir.

121 N.Y.S.—45

In my opinion, after considering the careful briefs of counsel, a partnership involving shares in profits and losses was continued between plaintiff and defendant by agreement on or about February 15, 1904, and that plaintiff is entitled to an accounting. The appointment of a receiver would destroy the use by Mr. Muir of his Stock Exchange seat; hence in lieu thereof a bond may be given by the defendant in an adequate sum, to be fixed in the interlocutory judgment.

Findings and proposed judgment to be submitted on notice.